603 A.2d 622

**In re ADOPTION OF C.M.W.**

**Appeal of B.L.K. (Two Cases).**

Superior Court of Pennsylvania.

Argued Aug. 15, 1991.
Filed Feb. 24, 1992.

Samuel C. Totaro, Jr., Trevose, for appellant.

Richard A. James, Media, for Ward, participating party.

Stephanie H. Klein, Wallingford, for guardian ad litem, participating party.

Before ROWLEY, President Judge, and BECK and HESTER, JJ.

ROWLEY, President Judge:

B.L.K. appeals from the Final Decree terminating his parental rights and terminating his visitation rights with respect to his minor child, C.M.W. After reviewing the record, we vacate the Final Decree.

On November 7, 1988, V.W., C.M.W.'s natural mother, filed a petition for adoption of C.M.W. by V.W.'s husband and for involuntary termination of appellant's parental rights. On October 31, 1989, the Orphans' Court entered a Decree [1] terminating appellant's parental rights. Appellant filed a petition for reconsideration of the Decree and a stay of the proceedings, which was denied by the Orphans' Court.

Appellant filed an appeal from the Decree of October 31, 1989. However, that appeal was discontinued so that the Orphans' Court could consider appellant's exceptions to the Decree. On December 24, 1990, after considering appellant's exceptions, the Orphans' Court entered an order denying the exceptions. On January 14, 1991, appellant filed an appeal from this order at No. 239 Philadelphia 1991. On January 23, 1991, the Orphans' Court entered an amended order denying appellant's exceptions and additionally terminating visitation rights which had previously been granted to appellant. Appellant filed a timely appeal from this order at No. 392 Philadelphia 1991.

This Court initially quashed the appeals because final decrees had not been entered. However, on December 16,

---

1. The actual decree signed by the Orphans' Court is merely titled "Decree." It is not specified as a decree nisi or final decree. In the docket entries, the decree is titled "Final Decree." Apparently, the court and the parties agreed to treat the decree as a decree nisi so that the court could consider appellant's exceptions.

1991, we granted appellant's petition for reconsideration and vacated the judgment quashing the appeals. We now reach the merits of appellant's arguments.

The record and the parties' briefs reveal the following set of occurrences: C.M.W. was born on March 4, 1986. Although appellant and V.W. were not married, they had lived together for approximately a year before their daughter's birth. Appellant's daughter from his previous marriage also lived with them. Appellant has total custody of this daughter.

In June, 1986, V.W. moved from the apartment she had shared with appellant to her cousin's home. After this separation, appellant regularly visited C.M.W.

In November, 1986, V.W. obtained a support order which required appellant to pay $25 a week in child support. In 1987, V.W. became disturbed by appellant's requests to spend more time with his daughter. In an attempt to control his visitation, she filed a complaint to confirm custody. On March 5, 1987, a hearing on this complaint was held. The hearing officer recommended that the parties undergo counseling. Both parties began attending counseling sessions. However, in May, 1987, V.W. walked out of a session and refused to return because she felt that the counselor was trying to coerce her into agreeing to overnight visitation, to which she was opposed.

On June 14, 1987, appellant was to visit with his daughter at his apartment, but this visitation did not occur. V.W. contends that she brought her daughter to appellant's apartment and knocked continuously for five minutes, but that appellant did not answer the door. Appellant, on the other hand, asserts that he was home all day and that V.W. did not come.

In September, 1987, V.W. married her present husband and moved to Delaware County. Although she notified the domestic relations office through which she received child support of her change in address, she did not notify the post office. Moreover, she did not tell appellant that she was

moving to another address, under a different name, and taking their daughter with her.

In November, 1987, appellant called the home of V.W.'s cousin and learned that V.W. had married and moved. Appellant first spoke with V.W.'s cousin's son who told him that V.W. had moved to the West Chester area, but that he did not know the specific address or phone number. Appellant later spoke with V.W.'s cousin who refused to provide him with V.W.'s new name or address.

Appellant testified that he attempted to locate V.W.'s new name or address through various sources. He stated that he went to the domestic relations office, but that they would not provide him with the information he sought. He also stated that he drove past V.W.'s cousin's home a few times to see if V.W.'s car was there. Appellant's father, a constable, also attempted to trace V.W.'s address through license plates. Appellant also testified that he contacted mutual friends in an attempt to locate V.W. Finally, on advice of counsel, appellant stopped paying child support so that V.W. would file a contempt petition pursuant to which he would discover her address. However, appellant's tax refund check was intercepted, and V.W. had no need to file a contempt petition. Appellant then contacted the IRS in an attempt to locate V.W., but the IRS would not provide him with the information.

In February, 1988, V.W. and her husband filed a petition for adoption in the Buck's County Orphans' Court seeking to terminate appellant's parental rights. A hearing was scheduled for July 5, 1988. However, V.W. withdrew the petition before the hearing.

On July 27, 1988, appellant filed a petition for visitation in Delaware County. A hearing on the petition was scheduled for November 9, 1988. On November 7, 1988, V.W. filed the present petition for adoption and involuntary termination of parental rights in Delaware County. At the hearing on the visitation petition, the trial court granted appellant weekly visitation.

From November, 1988 through January, 1989, appellant visited with his daughter one day a week. Because appellant lived an hour's drive from his daughter, he would travel two hours in the morning to pick her up and take her back to his home, and another two hours in the evening to take his daughter to her home and return to his home.

In January, 1989, appellant was involved in two accidents. In one, he fell off a curb and tore ligaments in his leg. Then, he was involved in an automobile accident while driving to visit his daughter. His foot was placed in a cast and he was given codeine for the pain. While he was taking the medication, he was not allowed to drive.

According to the log which V.W. began keeping after the court granted visitation rights to appellant, appellant did not visit his daughter again until February 11, 1989. Appellant visited with his daughter weekly until April 1, 1989. He missed his April 1 and April 8 visits, but did visit on April 15.

In June, 1989, appellant filed a contempt petition against V.W. alleging that he was not able to see his daughter in accordance with the visitation schedule. He also filed a petition for modification of the visitation order, requesting expanded visitation. He testified that he filed this petition after his father drove him to his daughter's home for his visit because he was on medication due to a problem he had with his arm, and no one answered the door. V.W., on the other hand, testified and noted in her log that she was home all day and appellant did not show up. Appellant did not see his daughter again until September 23, 1989, but he did send her a gift in August. He also testified that he called repeatedly between May and September, but that V.W. would not allow him to speak to his daughter. V.W. testified that he did not call during this time period.

On September 22, 1989, a hearing was scheduled on the contempt petition. However, before the hearing began, V.W. agreed to the entry of an order allowing appellant expanded visitation. Therefore, appellant withdrew the petition. Appellant visited with his daughter for the first time

since April, 1989 on September 23, 1989. Three weeks later, the hearing on the present petition to terminate appellant's rights was conducted.

In reviewing a termination of parental rights case, we apply the following principles:

> Parental rights may not be terminated in the absence of evidence which is clear and convincing. In Pennsylvania, courts applying this standard have required that the evidence be 'so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue.'

> Our scope of review in termination of parental rights cases is limited to a determination of whether the decision is supported by competent evidence. If our comprehensive review of the record does not reveal an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's findings, the order must stand.

*In re J.G.J., Jr.*, 367 Pa.Super. 425, 428–29, 532 A.2d 1218, 1220 (1987) (citations omitted).

█ In determining that V.W. had met her burden of proving by clear and convincing evidence that appellant's parental rights should be terminated, the trial court concluded that during a period from June, 1987 to July, 1988, appellant did not see his daughter. *See* Trial Court Opinion, 3/21/91, at 3. The court further concluded that appellant's excuses with respect to the non-performance of his parental rights during this period were unacceptable. *Id.* at 5. Finally, the trial court determined that appellant's post-abandonment conduct was not sufficient to show that he desired to re-establish a relationship with C.M.W. *Id.* at 6. After reviewing the record, we conclude that the trial court abused its discretion in finding that V.W. proved by clear and convincing evidence that appellant evidenced a settled purpose of relinquishing his parental rights.[2]

2. *See* 23 Pa.C.S. § 2511(a)(1).

It is undisputed that V.W. relocated her daughter without informing appellant of their new address or her new name. Under the circumstances of the present case, it would be patently unfair to overlook V.W.'s conduct in this matter and to penalize appellant for failing to see his daughter when V.W. took her to another county without informing appellant of her whereabouts. This is especially true considering the opposition which V.W. had previously shown to appellant's attempts to expand his visitation with C.M.W.

Appellant testified to various steps he took in order to locate C.M.W. after V.W. relocated. Although V.W. expressed skepticism that appellant actually took these measures, she offered no evidence that he did not. Furthermore, the trial court did not find that appellant did not take these measures. The trial court determined that the measures were not sufficient because appellant could have filed a petition for visitation "and somehow effect[ed] service by use of the offices of the Domestic Relations Department." Trial Court Opinion at 3. Assuming that appellant could have served a petition upon V.W. without knowing her address, a proposition which appellant disputes, *see* Appellant's Brief at 26, the fact that he could have taken some additional measure, in addition to the steps that he already took, does not reveal an intent to relinquish his parental rights. "Where a parent makes *reasonable* attempts to overcome obstacles created by the party seeking to terminate parental right, 'a mere showing that the [parent] could conceivably have pursued legal action more promptly cannot justify termination of parental rights.'" *In re J.G.J., Jr., supra,* 367 Pa.Superior Ct. at 434, 532 A.2d at 1223 (emphasis added) (quoting *In re D.J.Y.,* 487 Pa. 125, 132, 408 A.2d 1387, 1390 (1979)). The record reveals that appellant did in fact make reasonable attempts to locate his daughter. Accordingly, we conclude that the trial court erred in determining that appellant's attempts to locate his daughter after V.W. relocated with her were not sufficient.

Appellant first became aware of his daughter's whereabouts in February, 1988, when V.W. filed a petition to

terminate his parental rights. Appellant did not see his daughter until November. However, he did attend a hearing in May and he did file a petition for visitation in July, after V.W. withdrew her petition. Although appellant did not see his daughter during this period, it is clear that he was not relinquishing his rights. Rather, he contested V.W.'s petition to terminate his rights, and he filed his own petition seeking visitation. Furthermore, once his petition was granted, appellant began visiting with his daughter weekly. Although these visits became irregular in January, 1989, appellant did visit with his daughter until April, 1989. Between April and September, appellant did not see his daughter. However, he did file a contempt petition in June, 1989, alleging that V.W. disregarded the visitation schedule. V.W. denied this allegation, but the trial court made no factual findings as to the credibility of the witnesses.

Appellant also contends that medical difficulties kept him from making the two hour trip to his daughter's home. Again, the trial court did not determine that appellant was untruthful; it merely found his excuses unacceptable. However, "[a] parent's performance must be measured in light of 'what would be expected of an individual in circumstances in which the parent under examination finds himself.'" *In re Adoption of B.D.S.*, 494 Pa. 171, 179, 431 A.2d 203, 207 (1981) (quoting *In re Adoption of David C.*, 479 Pa. 1, 14, 387 A.2d 804, 810 (1978)). Although we do not condone appellant's failure on some occasions to inform V.W. that he would not be visiting with his daughter, we also do not believe that appellant could reasonably have been expected to make the two-hour trip to his daughter's home while he was taking medication which could affect his driving. Therefore, we believe that the trial court erred by finding appellant's explanations unacceptable.

In addition, the record shows that appellant has not been completely diligent about paying his child support. However, while a factor to be considered, a failure to pay child support is not, in and of itself, sufficient to find an intent to abandon. *In re Adoption of McAhren*, 460 Pa. 63,

331 A.2d 419 (1975). In discussing the amount of support appellant paid, the trial court stated that "the total he paid in support, other than an IRS intercept, appears to be $109 in 1987, and $330 in 1988." Trial Court Opinion at 4. Apparently, while recognizing the fact that appellant's IRS check had been intercepted, the trial court chose to disregard it in computing the amount of support which appellant paid. Although an intercept is not a voluntary payment, it nonetheless constitutes support and should not have been disregarded. Because appellant was required to pay support in the amount of $25 a week, $848, the amount of the intercepted check, constituted a large portion of his obligation. The trial court erred in discounting it.

Furthermore, the trial court incorrectly stated that appellant did not pay any support in 1989. The record clearly indicates, through the testimony of V.W. herself, that as of the hearing date, appellant had paid $565 in support. While this was not the total amount owed, it must be, and should have been, considered in the determination of whether appellant's rights should be terminated.

Finally, the record shows that during the period at issue, appellant had been injured and was on disability. Furthermore, he has total custody of another daughter whom he must support. While these factors do not excuse appellant from supporting C.M.W. as ordered, they should have been considered before his parental rights were completely terminated.

It is clear from the record that appellant has not been a model parent. However, the record also shows that he has not shown an intent to relinquish his parental rights nor has he failed to perform his parental duties to such an extent that termination is warranted. As counsel for C.M.W. stated in her brief,

> [Appellant] is not a perfect parent. But this Court cannot sanction termination of the rights of imperfect parents. It can only intervene where the parent has shown a clear intent to relinquish his rights.... [A]bsent compelling reasons, this Court cannot permit such an intrusion into

[C.'s] rights. [C.] has [the] right to know her father with all his flaws.

Brief of C.M.W. at 19–20.[3]  Furthermore, V.W., proponent of the termination of appellant's rights, has not been completely faultless with respect to the difficulties present in this case.  For the above reasons, we reverse the orders terminating appellant's parental and visitation rights.

Orders reversed.

603 A.2d 627

**In re J.C., T.C., H.C., K.K. & E.K.**

---

**3.** We note that the trial court chose to disregard the recommendations of counsel appointed for C.M.W. and the court-appointed psychologist, both of whom recommended that appellant's rights not be terminated.