# In re Adoption of A.G.D.

C.P. of Lawrence County, no. 20011 of 2010, O.C.A.

*Norman J. Barilla,* for petitioner.
*Nick A. Turco Jr.,* for respondent.

WHERRY, *S.J.,* August 31, 2010—This case was before the court on July 21 and July 26, 2010 on a petition for involuntary termination of parental rights of the natural father, Craig S. Damron Jr., filed by the natural mother, Linann R. Damron.

The minor child, A.G.D., was born on October 29, 2007. At the time of the minor child's birth, the natural parents were married and living together at 354 Moyer Road, New Castle, Pennsylvania. Within a year of A.G.D. being born, Natural Father had an affair with another

woman; this affair resulted in a second child being born on May 22, 2009. The parties in this action were subsequently separated. The petitioner continued to reside at the marital residence with the minor child. Natural Father left the home, and he currently lives with his mother at P.O. Box 108, Edinburg, Pennsylvania.

Testimony established that Natural Father last saw the minor child on February 14, 2009. Prior to this last visit, Natural Father exercised his custody rights on a sporadic basis. Visitation arrangements had been made through the court after petitioner obtained a protection from abuse order against the natural father. The court order granted Natural Father visitation two days per week at his father's (grandfather's) house. When Natural Father saw the minor child, the visits often resulted in a negative environment, as more time was spent fighting with the petitioner, rather than visiting with the minor child. This eventually led to the grandfather refusing to supervise the custody visits; arrangements were then made for Natural Father to visit the minor child at petitioner's grandmother's house.

Throughout this entire time frame, Natural Father admittedly used drugs and alcohol. He described himself to the court as a "monster" while on drugs, and did not begin to view himself in a better light until he enrolled himself in rehab for the second time, on January 18, 2009. Natural Father completed rehab February 11, 2009, and continued to seek treatment for 18 months thereafter as an outpatient. Subsequent to Natural Father completing rehab, he only saw A.G.D. one time, on February 14, 2009, as previously stated. Natural Father testified that he made various attempts to contact the petitioner, but

she never responded to his requests to see the child. Natural Father additionally stated that any time he pursued the petitioner for visitation she would threaten to call the police because he was "harassing" her. Natural Father reasoned that because he was on parole at that time, this created a significant barrier, which preventing him from exercising custody.

Grandfather, however, continued to maintain a relationship with petitioner and has custody of the minor child on a regular basis. Grandfather frequently baby-sits A.G.D. while petitioner is at work. Unfortunately, grandfather no longer has a relationship with his son, A.G.D.'s natural father, and consequently, Natural Father felt unable to contact his father to make arrangements to see the minor child. Natural Father even believed that A.G.D.'s mother and the grandfather were conspiring to prevent him from seeing the minor child.

Natural Father believes that the above stated circumstances establishes significant justification for failing to exercise his parental rights or perform his parental duties.

The statutory grounds for termination of parental rights are set forth at 23 Pa.C.S. §2511, which provides in pertinent part as follows:

"(a) General Rule—The rights of a parent in regard to a child may be terminated after a petition [is] filed on any of the following grounds:

"(1) The party by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

"(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

"(b) Other considerations—The court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed . . . the court shall not consider any effort by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."

Case law clearly interprets section 2511 as requiring a two-part analysis in any termination proceeding. *In re Adoption of J.M.,* 991 A.2d 321, 323 (Pa. Super. 2010). Initially, the court must focus on the conduct of the parent, where the petitioning party must establish by clear and convincing evidence that the parent's conduct satisfies the statutory grounds set forth in section 2511. If the petitioning party is able to meet this burden, the court shall then proceed to a second analysis, and determine how the needs and general welfare of the child can best be served. *In re L.M.,* 923 A.2d 505, 511 (Pa. Super. 2007).

Before proceeding with the first prong of its analysis, this court reiterates the fact that the moving party must

produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or refusal or failure to perform parental duties. *Matter of Adoption of Charles E.D.M. II,* 550 Pa. 595, 600, 708 A.2d 88, 91 (1998). The trial court must further consider any explanations the non-custodial parent has for the apparent failure to assume parental duties, as well as any barriers put in place by the custodial parent, in an effort to prohibit contact and communication between the non-custodial parent and the minor child. *In re Shives,* 363 Pa. Super. 225, 229, 525 A.2d 801, 803 (1987).

At the hearing, no party refuted the fact that the natural father last saw the minor child on February 14, 2009. Natural Father, in an effort to justify his failure to see the child, stated that the petitioner threatened to call the police and file harassment charges. A review of the record indicates that petitioner never filed any charges against Natural Father with the exception the initial protection from abuse order.

While the court believes that many barriers were put in place by petitioner and possibly even by grandfather, the testimony presented at the hearing established that Natural Father did little if anything to overcome these obstacles. It is not sufficient for Natural Father to claim or even prove that the petitioner made it extremely difficult for Natural Father to see the minor child. A parent must exert a "sincere and genuine effort to maintain a parent-child relationship; the parent must *use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles*

*placed in the path of maintaining the parent-child relationship." In re C.M.S.,* 832 A.2d 457, 462 (Pa. Super. 2003) (citing: *In re Shives,* 363 Pa. Super. 225, 229, 525 A.2d 801, 803 (1987). (emphasis added)

Additional testimony presented by Natural Father, and his mother, Nancy Damron, established that he was frequently advised by both his parents to wait for a custody hearing to be initiated to sort out visitation and more appropriate custody arrangements. While the court recognizes that the legal process in any case can often be an overwhelming course to travel for those who do not frequently venture upon its terrain, a person's rights *cannot* be safeguarded by waiting for a more appropriate or convenient time to initiate litigation. *In re Adoption of Godzak,* 719 A.2d 365, 368 (Pa. Super. 1998). The Superior Court, in *In re Adoption of Godzak,* held that parental rights will not be preserved "by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *Id.*

Father testified that he tried to obtain legal aid from Neighborhood Legal Services; however, they represented the petitioner in the previous PFA order and they were unable to represent Natural Father in other matters regarding Linann R. Damron. While this may be yet another obstacle for Natural Father to overcome in order to exercise his parental rights, the court does not view it as a sufficient excuse to justify his failure to act. Natural Father's actions were insufficient for this court to conclude that he exercised a reasonable level of firmness to exercise his rights. Contrast with; *In re Adoption of C.M.W.,* 412 Pa. Super. 360, 603 A.2d 622 (1992)

(where father displayed reasonable efforts necessary to overcome the obstacles put in place by child's mother, where mother changed names, moved several times, and failed to notify father of addresses or contact information).

Well over a year elapsed from February 14, 2009, until this petition was filed on March 11, 2010, without the natural father making any genuine attempt to see A.G.D. The petitioner neither moved nor changed her home phone number, which was the same number used by the parties while they were married. Natural Father's inaction cannot be justifiably rationalized by his fear that any contact with petitioner would result in a violation of his parole. He never sent cards or presents to the minor child, let alone initiate a custody complaint. Accordingly, the court finds that Natural Father meets the statutory requirements set forth in section 2511(a)(1) and the evidence presented by the petitioner establishes that Natural Father failed to perform any parental duties for a period of time exceeding six months.

This court next considers three factors set forth by the Pennsylvania Supreme Court in the case of *In the Matter of Adoption of Charles E.D.M.,* 550 Pa. 595, 708 A.2d 88 (1998). The court considers Natural Father's explanations for his failure to perform any parental duties; the post-abandonment contact between Natural Father and the minor child; and finally, the effect of terminating Natural Father's rights pursuant to section 2511(b). *Id.*

With respect to Natural Father's explanation for his conduct, this court believes, as previously stated, that Natural Father's fear of violating his parole is insufficient. There are many ways which Natural Father could

have exercised his legal custody without having to contact the petitioner. The record reflects that Natural Father did not petition the courts for any type of relief, with respect to custody of the minor child; he merely sat idle and waited for a custody action to be initiated by someone else. Natural Father additionally reasoned that, because he has been recovering from alcohol and substance abuse since his completion of rehab in February of 2009, he was not in a desirable state to be around A.G.D. This court, however, does not believe that Natural Father's rationale is sufficiently adequate when it considers that Natural Father has a second child, whom he has cared for and exercised custody with, during this same time frame.

With respect to the past-abandonment contact, there is a lack of necessary evidence to establish that Natural Father attempted to establish a bond with the minor child. Although the Natural Father did place a happy birthday add in the local paper, this is of little effect on a 2-year-old child, who cannot appreciate the gesture or even understand its purpose. Furthermore, while the petitioner has been receiving child support within the last five months, evidence presented during the two-day hearing established that these payments were being made by the paternal grandmother on Natural Father's behalf.

And finally, with respect to the effect of termination of parental rights on the minor child, this court finds that said termination would be in the child's best interest for the reasons set for forth below.

While this court finds Natural Father to be very forthcoming with his history of substance abuse and failure to be an appropriate father figure in A.G.D.'s life, this

finding does not change the facts, that for a significant period of time, Natural Father failed to perform any parental duties and that no bond currently exists between Natural Father and the minor child. This court cannot and will not consider Natural Father's future ability to care for A.G.D. This court can only consider the facts presented thus far. Furthermore, any future failure on Natural Father's behalf would have a significant and detrimental effect on the minor child. See *e.g., In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).[1]

The natural Mother of A.G.D., petitioner in this action, has provided a stable and loving environment for A.G.D. to grow and develop in. Petitioner has maintained steady employment and is clearly able to continue to raise the minor child in a proper manner where the child's emotional, physical, intellectual and developmental needs are met. Additionally, petitioner presents to this court her fiance, Robert Forkey, who is currently willing to adopt A.G.D. Mr. Forkey is gainfully employed as a forklift operator and spends all of his spare time with petitioner and the minor child. Mr. Forkey is fully aware that if he does adopt A.G.D. he will have the legal responsibility to care and provide for A.G.D. and is willing to accept this responsibility.

Natural Father objects to Mr. Forkey's ability to adopt A.G.D. because Mr. Forkey and the petitioner are not currently married. In closing arguments, counsel for Natural Father referenced the case of *In re Adoption of J.M.*, 991 A.2d 321 (Pa. Super. 2010) in support of his objection.

---

1. Where the court stated that, "The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."

After a close review of *In re Adoption of J.M.,* this court interprets this case to be an accurate depiction of the circumstances currently before the court. In *J.M.,* the Superior Court held that section 2901 of the Adoption Act permits a non-spouse to adopt a child where one of the child's natural parents continues to retain custody "upon good cause shown". *J.M.,* 991 A.2d at 326 (citing: *In re Adoption of R.B.F.,* 569 Pa. 269, 280, 803 A.2d 1195, 1202 (2002)). A court, in allowing a non-spouse to adopt a child, is afforded the discretion to determine whether the adoption petition should be granted. *R.B.F.,* 803 A.2d at 1201-1202. However, the future occurrence of an adoption proceeding taking place has no bearing on this court's present ability to terminate Natural Father's parental rights, if such a termination meets the statutory requirements and is in the best interest of the child.

Taking all of the above factors and circumstances into consideration, the court finds that terminating Natural Father's rights is warranted and necessary pursuant to section 2511(a), and that severing Natural Father's parental rights would best serve the child's developmental, emotional, and physical needs. Accordingly, the court will enter the following order.

## ORDER

And now, August 31, 2010, the court finds the testimony of petitioner, Linann R. Damron, to be credible and sufficient to establish by clear and convincing evidence the grounds for involuntary termination of parental rights pursuant to 23 Pa.C.S. §2511 (a)(1) and (2).

(1) At arriving at this decision, the court has considered the statutory authority for involuntary termination of

parental rights, 23 Pa.C.S. §2511(a)(1) and (2) ; and appellate case authority, including but not limited to, *In the Matter of Adoption of Charles E.D.M.,* 550 Pa. 595, 708 A.2d 88 (1998); *In re Adoption of R.J.S.,* 901 A.2d 502 (Pa. Super. 2006); and *In re Adoption of J.M.,* 991 A.2d 321 (Pa. Super. 2010).

(2) Based upon the foregoing statutory authority and consideration of the appellate court cases cited above, among others, the court hereby terminates the parental rights of the natural father, Craig S. Damron Jr., to the minor child, A.G.D.

(3) Custody of A.G.D. is hereby award to the natural mother, Linann R. Damron.

(4) The respondent, Craig S. Damron Jr. shall have no right to object to or receive of adoption proceedings with respect to the above child.

(5) Attached to the order and made part hereof is the statutory notice to natural parent relative to the right to place personal information on file with the court and the Department of Health, which shall be served on the natural parent, together with a certified copy of this order of court.

(6) The prothonotary shall properly serve notice of this order by regular mail or personal service upon counsel of record for the parties.

---

## NOTICE TO NATURAL PARENT(S)

Following a court hearing, your parental rights to your child have been terminated. You have the right to place

personal information on file with the court and with the Department of Health.

This information may not be disclosed to anyone. However, you may give the court and the Department of Health any other information placed on file about the natural parent(s). This information may only be given to: (1) the child if 18 years old or older; or, (2) the child's adoptive parents or legal guardians if the child is under 18 years of age. The child may see these records if you give permission by filing a consent form with the court and the Department of Health. If both parents sign consent forms, the child can receive the information on the birth certificate. If only one parent signs a consent form, only the identity of that parent may be given to the child.

You may update the records to show your current address or other information about yourself.

You may withdraw your permission for the child to see these records at any time by filing a withdrawal of consent form with the court and the Department of Health.