J-S13030-15

2015 PA Super 204

IN RE:  S.S.W., DOB 11/3/2010
IN RE:  S.F.W., DOB 9/27/2012

APPEAL OF:  S.W. NOW S.P.W. AND
M.J.W.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1726 WDA 2014

Appeal from the Order entered October 6, 2014
In the Court of Common Pleas of Somerset County
Orphans' Court at Nos: 15 Adoption 2014 and 15A Adoption 2014

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

OPINION BY STABILE, J.:                          **FILED SEPTEMBER 24, 2015**

Appellants, S.P.W. (Mother) and M.J.W. (Stepfather), appeal from the orphans' court's October 6, 2014 order denying their petition for involuntary termination of the parental rights of J.M.W. (Father), to S.S.W. and S.F.W. (the Children).  We affirm.

The orphans' court set forth its findings of fact in its opinion of November 13, 2014.  In relevant part, the court found that the Children have been in sole custody of Mother since January 4, 2013.  Orphans' Court' Opinion, 11/13/14, at ¶ 6.  Father has not attempted contact with Mother or Children since then.  **Id.** at ¶ 25.  Mother obtained an order pursuant to the

Protection From Abuse (PFA) Act[1] after a December 27, 2012 incident during which Father threatened to shoot himself in Mother's presence and also grabbed Mother's thigh, resulting in visible bruising. *Id.* at ¶¶ 8-9, 13. At a January 10, 2013 PFA hearing, Father consented to entry of an order without admitting the underlying facts. *Id.* at ¶ 17. Pursuant to that order, Mother had sole physical and legal custody of the Children and Father was not permitted any contact. *Id.* Also, on January 10, 2013, Father sent flowers to Mother to apologize for his conduct. *Id.* at ¶ 19. On January 19, 2013, Father took diapers for their baby to Mother's office and left them as Mother was out of town. *Id.* at ¶ 21. For this attempted contact, police charged Father with indirect criminal contempt of the PFA order. *Id.* at ¶ 22. Father pled guilty and received a 90-day suspended sentence. *Id.* at ¶ 23.

Father participated in two months of counseling in April and May of 2013 for which a certificate of completion was provided to the Somerset County probation officer. *Id.* at ¶ 30. Father also underwent faith-based pastoral counseling. *Id.* at 31. The orphans' court found Father "has undergone a reversal in his mental outlook through having secured a new job with job training and steady responsible work." *Id.* at ¶ 31.

The trial court extended the PFA order to January 10, 2016 because Father failed to appear at a December 12, 2013 PFA extension hearing. *Id.*

---

[1] 23 Pa.C.S.A. § 6101, *et seq.*

at ¶ 36. Father's employer denied his request for time off to attend the hearing and Father did not believe his appearance at the hearing would alter the result because he could not afford counsel. *Id.* at ¶ 37. Father attempted to obtain counsel for the custody proceeding though Legal Aid, but Legal Aid declined assistance due to criminal charges pending against Father. *Id.* at ¶ 43.

In its analysis, the orphans' court noted Father's emotional "turnaround" owing to psychiatric treatment. *Id.* at 12.[2] Concerning § 2511(b), the orphans' court noted, "There was no testimony from either party regarding the relationship between [Father] and [the Children] prior to January 2013." *Id.* Specifically, the court noted the older child was two at the time of separation and neither party offered evidence on the nature of the bond between the older child and Father. *Id.* at 13.

The orphans' court credited Father's testimony that he could not afford counsel and that the absence of competent counsel rendered him unaware of the possibility of modifying the PFA to permit him to maintain a relationship with the Children. *Id.* In addition, "[a]ny attempts he made to make amends with [Mother] or to initiate contact with his in-laws was deemed contemptuous by the court, resulting in his arrest." *Id.*

_____

[2] We have assigned page numbers to the orphans' court's opinion as it is not paginated and only the findings of fact appear in numbered paragraphs.

On July 31, 2014, Appellants filed a petition seeking termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). At the conclusion of an October 3, 2014 hearing on the petition, the orphans' court found that Appellants failed to prove by clear and convincing evidence that termination of Father's parental rights was appropriate under § 2511(a)(1). The orphans' court entered an order to that effect on October 6, 2014, and Appellants filed a timely appeal.[3]

Section 2511(a)(1) permits involuntary termination of parental rights where a parent exhibits a settled purpose of relinquishing his or her parental claim or refuses to perform parental duties for six months prior to the filing of a termination petition. 23 Pa.C.S.A. § 2511(a)(1). On appeal, Appellants argue the orphans' court erred because the record reflects clear and convincing evidence of Father's settled purpose of relinquishing his parental rights or failure to perform parental duties for at least six months prior to Appellants' petition.

> Although the six month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month statutory provision. The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination.

_____

[3] Appellants filed a concise statement of errors along with their notice of appeal, in accord with Pa.R.A.P. 1925(a)(2)(i).

*In re I.J.*, 972 A.3d 5, 10 (Pa. Super. 2009). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

Our courts have provided the following guidance on the meaning of parental duty:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (quoting *In re Burns*, 379 A.2d 535, 540 (Pa. 1977)), *appeal denied*, 859 A.2d 757 (Pa. 2004).

We review the orphans' court's decision for abuse of discretion or error of law, and we must defer to the orphans' court's findings of fact if the record supports them. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). As we have already noted, termination of parental rights is appropriate only

where clear and convincing evidence supports termination under § 2511(a). *Id.*

Appellants argue the orphans' court erred because Father has not seen the Children since the older one was two years old and the younger one was three months old. Appellants' Brief at 11. Appellants also argue that Father's repeated failure to appear at hearings and his failure to procure counsel to pursue custody of the Children prove by clear and convincing evidence that Father has evinced a settled purpose to relinquish his rights and/or has failed to perform parental duties. As noted above, the orphans' court was cognizant of these facts. The court found that Father's absence was not the result of a refusal to perform parental duties or a settled purpose of relinquishing his rights. Rather:

> In the instant case we have gone to great length to detail the facts surrounding Father's separation from [the Children]. In a short period of three weeks he was the subject of [1] a PFA action; [2] criminal charges of simple assault; [3] divorce action; [4] custody action; [5] loss of his employment; [6] loss of his home; [7] felony theft charges; [8] criminal contempt charges; and [9] inpatient mental health treatment. All of the foregoing rose at the outset of an unstable period of his emotional and mental health which resulted in his inpatient stay in a hospital psychiatric unit as well as the engagement of intensive mental health counseling[.] In the court's anaylsis, Father underwent an extremely difficult time in his life when everything was turned upside down, and he was, for the most part, on his own to sort out all that had transpired.

Orphans' Court Opinion, 11/13/14, at 11. The orphans' court noted Father's successful counseling, his decision to seek spiritual guidance, and his self-

described emotional turnaround. *Id.* at 12. The orphans' court also noted

Father's unsuccessful attempt to procure counsel through Legal Aid.

> It is the court's sense that he has suffered throughout his custody and PFA matters from lack of competent counsel to educate him that the PFA order regarding custody could be modified to allow him to reframe a custodial relationship with [the Children]. While it may routinely be deemed evidence of lack of continuing interest by a father that he not proceed through the court system to enforce and define his legal custodial rights, it was the sense of the court that Father herein legitimately believed that he was bound by the PFA order and its contempt power to avoid any contact with [the Children]. Any attempt he made to make amends with his wife or to initiate contact with his in-laws was deemed contemptuous by the court, resulting in his arrest.

*Id.* at 13.

The orphans' court was free to credit Father's testimony, and we must

accept the court's credibility determinations for purposes of appellate review.

The court found as fact that Father has achieved a better mental outlook

through counseling, and has obtained a steady job. *Id.* at ¶¶ 30-31. The

court also found as fact that Father missed at least one court hearing

because he would have lost his job if he took time off to attend the hearing.

*Id.* at ¶ 37.

Appellants also rely on a letter Father wrote to Mother in which he

offered to relinquish his rights in order to end what he believed was

harassment from Mother and her family. The trial court quoted the letter

verbatim, and found that Father wrote it out of "desperation" and eventually

refused to sign an agreement relinquishing his rights when Mother sent one. *Id.* ¶¶ 39-40.

In summary, the orphans' court opinion evinces a thorough consideration of the facts, which are not substantially in dispute. We are cognizant, as was the orphans' court, of Appellants' argument that the PFA, civil litigation, and criminal charges pending against Father were largely of his own making. Nonetheless, the orphans' court believed Father reached a low point in his life and attempted to fight his way out of it. To that end, Father sought psychiatric and spiritual counseling, and obtained job training and a steady new job. He has been steady in paying his $400.00 per month support obligation. Mother testified that she offered Father custody of the Children if he attended counseling. N.T. Hearing, 10/3/14, at 15, 21-22. That plan never came to fruition because Mother did not know Father underwent the requested counseling. *Id.* at 15, 35. For all of these reasons, the orphans' court determined the record did not contain clear and convincing evidence warranting termination of Father's parental rights under § 2511(a)(1).[4]

As an appellate court, we are bound by the orphans' court's credibility determinations and findings of fact. The record reflects that the orphans'

_____

[4] Given this determination, the orphans' court had no occasion to analyze § 2511(b). The orphans' court observed that the parties produced "minimal testimony" relevant to § 2511(b). Orphans' Court Opinion, 11/13/14, at 12.

court tailored its decision to the circumstances of this case, including Father's inability to obtain counsel and lack of awareness of his legal options regarding custody of the Children. Under the totality of the circumstances, the orphans' court determined that termination of parental rights was not warranted. Based on all of the foregoing, we conclude the orphans' court correctly applied the law, and we discern neither abuse of discretion nor legal error in its conclusion. We therefore affirm the orphans' court's order.

Order affirmed.

P.J.E. Bender joins the Opinion.

J. Mundy files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2015