J-S28029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.E.-H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 127 MDA 2019 |

Appeal from the Decree Entered January 8, 2019
In the Court of Common Pleas of Lycoming County Orphans' Court at
No(s):  6618 Adoption

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 17, 2019**

N.E.-H. (Mother) appeals the decree entered on January 8, 2019, terminating her parental rights to her minor son, D.K. We affirm.

The trial court aptly summarized the facts and procedural history of this case, therefore we do not restate them. **See** Trial Court Opinion ("TCO"), filed 1/9/19, at 2-28. At the termination hearing, Meghan Young, Esq. was legal counsel for D.K. and Angela Lovecchio, Esq. represented as the guardian *ad litem*. Following the hearing, the trial court entered a decree terminating Mother's parental rights. Mother did not file a motion for reconsideration and this timely appeal followed.[1]

---

\*   Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a single order terminating the parental rights of Mother, Father, and T.K. (mother of Father's other child), on January 8, 2019,

Mother raises the following issues on appeal:

1. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Mother] had a settled purpose to relinquish a parental claim under 23 PA[.] C.S.A. § 2511(A)(1) in that [Mother's] efforts to maintain contact with the child and perform parental duties were continually rebuffed by the [A]gency?

2. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Mother] exhibited repeated and continued incapacity, abuse, neglect or refusal that causes the child to be without essential parental care, control or subsistence necessary for the child's physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal were remedied by [Mother] under 23 PA[.] C.S.A. § 2511(A)(2)?

---

to each of their children respectively. The order was entered under docket numbers 6617 and 6618. Docket number 6617 is in respect to T.K., while 6618 is in respect to Mother. *See* Petition for Involuntary Termination of Parental Rights, No. 6618 Adoption. Mother filed a notice of appeal under both docket numbers. *See* 127 MDA 2019, 128 MDA 2019. The docket summaries for both docket numbers reflect that a motion for reconsideration was filed on January 23, 2019, after the notice of appeal to this Court. The trial court scheduled a hearing on the motion on January 28. As a result, we ordered a rule to show cause why the appeal should not be quashed pursuant to Pa.R.A.P. 1701(b)(3). Mother did not respond to the order. We discharged the order on March 15, leaving it to the panel to decide the issue. *See* Order, filed 3/15/19. Upon a review of the certified record, Mother did not file a motion for reconsideration and therefore the appeal is properly before us. While both dockets reflect the motion, it was T.K. who filed the motion. *See* Motion for Reconsideration and Request to Toll Appeal Period Pending Resolution, filed 1/23/19. The trial court clarified this slight confusion in the docket as well. *See* Decree, filed 2/12/19, at n.6 ("On this issue, the Court would note that [Mother] did incorrectly appeal under both docket numbers; however, [Mother] did not file the motion for reconsideration"). Additionally, on February 8, Mother withdrew her appeal under 128 MDA 2019, stating that she is the biological mother to D.K. only. *See Praecipe* for Discontinuance, filed 2/19/19. Thus, the current appeal before us is properly docketed under number 6618.

3. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Mother's] rights should be terminated under 23 PA[.] C.S.A. § 2511(B), in that the developmental, physical, and emotional needs and welfare of the child are not best served by terminating [M]other's parental rights?

Mother's Br. at 4.

Our standard of review in a case involving the termination of parental rights is as follows:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

\*\*\*

Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, governs involuntary termination of parental rights. A party seeking termination must

- 3 -

prove by clear and convincing evidence that termination is warranted under Section 2511(a). If the court finds that termination is warranted under Section 2511(a), the court then must make a determination under Section 2511(b) of the child's "developmental, physical and emotional needs and welfare." 23 Pa.C.S.A. 2511(b). When a petition is filed under subsection (a)(1), (6), or (8), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." *Id.*

Here, the Agency filed the petition under subsections (a)(1), (2), (5), and (8) and subsection (b). The court agreed that the agency "established by clearing and convincing evidence that . . . [Mother]" was in violation of all the pleaded subsections. These subsections provide the following:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect and refusal cannot or will not be remedied by the parent.
>
> &#42;&#42;&#42;
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to

the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

(b) **Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). "[W]e need only agree with [the court's] decision as to any one subsection in order to affirm the terminating of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

First, Mother claims that the trial court erred in determining that the Agency satisfied its burden as to Section 2511(a)(1). She maintains that "despite [her] repeated efforts to remain in [Child's] life, the Agency resisted [her] efforts at reunification with [Child] due to the Agency's observations of

Mother and MK."[2] Mother's Br. at 15. Thus, Mother argues that she did not evidence "a settled purpose of relinquishing her parental rights to [Child], nor has she refused or failed to perform parental duties." *Id.* at 16.

In order to satisfy section 2511(a)(1), the party seeking termination must "produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re C.M.S.*, 832 A.2d 457, 461 (Pa.Super. 2003) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). "Parental duty is best understood in relation to the needs of a child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (quoting *In re C.M.S.*, 832 A.2d at 462). The clear and convincing evidence standard requires evidence that is "so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Matter of Adoption of Charles E.D.M., II*, 708 A.2d at 91 (quoting *Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994)).

Here, the trial court concluded that the Agency showed by clear and convincing evidence that termination was appropriate under subsection (a)(1):

> Under § 2511(a)(1) and (2), Father, [Mother], and TK have clearly failed to utilize all available resources to maintain a relationship with MK or DK. While Father and [Mother] showed initial interest in bettering themselves through classes and resources provided

---

[2] MK is the child of Father and TK.

- 6 -

to them by the county, that interest was fleeting. Despite more than a year lapsing, all three parents have shown insufficient improvement. During visitation, . . . [Mother] continues to ignore MK and DK's medical needs. In fact, Father, [Mother], and TK appear fed up with the involvement of the Agency and believe they do not need any help in raising the children. . . . [Mother] has stated that she would utilize the exact same techniques as before – including padlocks on the outside of the bedroom doors – for dealing with MK and DK.

. . . . Father's and [Mother's] indifference to the improvements in MK's and DK's life since being placed in the Smiths' household supports the Court's belief that Father and [Mother] will return once again to their old ways of discipline if the children are returned in their care. In fact, despite witnessing said improvements, [Mother] continues to blame DK's inability to hear on the Smiths. And, even though [Mother] has not shown the same disdain for DK as MK, [Mother] continues to ignore DK's basic needs based on her own twisted sense of right and wrong.

TCO at 31-33.

After a review of the certified record, we agree with the trial court's finding. To begin, Mother refused to acknowledge that anything was wrong with Child's hearing and refused to agree to Child's hearing being tested, thereby leaving the court with no choice but to enter an order that Child's hearing be tested. Additionally, Mother continued to express that she found nothing wrong with locking Child in Mother's bedroom. Moreover, when the petition was filed, Child was three years old and had only been to two wellness appointments with a physician. All the above established that Mother failed to perform her parental duties in not making the needs of Child her top priority. No relief is due.

Next, Mother claims that there was not clear and convincing evidence to satisfy Section 2511(a)(2). She maintains that she "did not exhibit repeated

and continued incapacity, abuse, neglect or refusal that caused the child to be without essential parental control." Mother's Br. at 23. Because we conclude that there was clear and convincing evidence to support a finding of termination under subsection (a)(1), we do not address this second issue. *See In re B.L.W.*, 843 A.2d at 384.

Last, Mother challenges the trial court's finding of termination under subsection (b). "Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b)." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). In making this determination, "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition," when a petition was filed pursuant to subsections (a)(1), (6), or (8). *Id.* at 1117 (quoting 23 Pa.C.S.A. § 2511(b)). The court should also determine whether a bond exists between the child and parent and if termination "would destroy an existing, necessary and beneficial relationship." *Id.* at 1121.

Here, the trial court acknowledged that Child had a bond with Mother but also stated that it would be detrimental to Child to sever the clear bond created with the resource family (Mr. and Mrs. Smith). Additionally, Mother expressed her unwillingness to concede that Child had a hearing impairment and instead blamed the Smiths for Child's hearing issue. Thus, Mother's response shows that Child's developmental needs would be serviced better by

the Smiths. This conclusion is also supported by the evidence at the termination hearing that Child's physical and emotional needs as well as his welfare have dramatically increased since being with the Smiths. As the trial court noted:

> Mrs. Smith testified that DK has formed a strong bond with MK since residing in her home and will hold hands with his brother if watching television or traveling in the car. Mrs. Smith also noted that when DK first arrived at her home he did not interact much with anyone or anything. However, DK is now reacting in an age appropriate way and showing a greater interest in his own movement, such as catching and throwing and is more interested in books during story time. DK also - through speech and occupational therapy - learned sign language at Mrs. Smith's behest and, eventually, learned to consistently speak approximately thirty words. DK has also shown a stark improvement since undergoing surgery to remove fluid from his ears. He now enjoys music and reacts in normal time to sounds.

TCO at 36. The trial court did not abuse its discretion. We affirm the decree terminating Mother's parental rights.

Decree affirmed.

Judge Bowes joins the Memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/17/19