J-A03002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: P.H.J.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: G.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1492 MDA 2019 |

Appeal from the Decree Entered August 15, 2019
In the Court of Common Pleas of York County Orphans' Court at No(s):
2019-0088

*****

| | | |
|---|---|---|
| IN RE: P.J.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: G.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1493 MDA 2019 |

Appeal from the Decree Entered August 15, 2019
In the Court of Common Pleas of York County Orphans' Court at No(s):
2019-0090

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 18, 2020**

G.P. (Father) appeals[1] from the trial court's orders[2] involuntarily terminating his parental rights to his two minor children, P.H.J.P. (born 5/2008) and P.J.P. (born 5/2010) (collectively, Children) and transferring custody of Children to K.O. (Mother). Father argues on appeal that Mother used "obstructionist" tactics to thwart his efforts to perform his parental duties and, therefore, his parental rights to Children should not have been terminated. After careful review, we affirm.

Mother and Father were married in September 2006; they divorced in September 2016. Father has not financially supported Children since his separation from Mother in 2009. Father had a son with another woman during his separation from Mother. In September 2011, Father was convicted of endangering the welfare of children, simple assault, aggravated assault and various other charges and sentenced to 11½ to 23 months in prison. The charges arose after Father was alleged to have abused his other biological child (not with Mother). Father filed for custody of Children when he was briefly released from jail in February 2012. Father was rearrested and recommitted to jail shortly after filing for custody and, as a result, did not

_____

[1] On November 19, 2019, our Court *sua sponte* consolidated the appeals at Nos. 1492 and 1493 MDA 2019, as both appeals involve the same appellant and similar issues. **See** Pa.R.A.P. 513.

[2] We note that by filing two separate notices of appeal with one docket number on each notice, Father has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." **See also** Pa.R.A.P. 341(a).

attend the custody hearing held in April 2012. Mother was ultimately granted full custody of Children. Father was released from jail in August 2015. Father filed petitions to modify custody in 2016 and 2017, seeking partial physical custody of Children during holidays. Father moved to Virginia in April 2018, a three-and-a-half hour drive from Children; he was still living in Virginia at the time of the termination hearing.

Mother successfully petitioned for two protection from abuse (PFA) orders against Father; the final orders were entered in August 2015 and October 2018.[3] The second order, which was still in effect at the time of the termination hearing, permitted Father to have limited contact with Children through counsel to ascertain their health and welfare. Moreover, the order specified that once Father underwent a risk of harm evaluation[4] pursuant to 23 Pa.C.S. § 5328 , and was determined not to pose a risk of harm to Children, he may contact counsel "to make . . . arrangements with regards to custody."

---

[3] The court's August 2015 PFA order expired in three years, in August 2018. The court denied Mother's request to extend the order. The October 2018 PFA order expired in one year, in October 2019.

[4] **See** 23 Pa.C.S. § 5328 (factors to consider when awarding custody). Specifically, when ordering any form of custody, the court shall determine the best interest of the child by considering, in part, the following: the present and past abuse committed by a party or member of the party's household; whether there is a continued risk of harm to the child or an abused party; which party can better provide adequate physical safeguards and supervision of the child; and any information relating to consideration of child abuse and involvement with protective services. **See id.** at § 5328(a)(2), (2.1).

PFA Order, 10/1/18, at ¶5.  At the time of the termination hearing, Father still had not obtained a risk of harm evaluation that was acceptable to the court.

On June 4, 2019,[5] Mother[6] petitioned to terminate Father's parental rights to Children under 23 Pa.C.S. §§ 2511(a)(1), (b) of the Adoption Act.[7] On August 14, 2019, the trial court held a termination hearing where Mother and Father testified.[8]  The court, without counsels' objection, took judicial

_____

[5] Mother and Father's custody trial was held on June 7, 2019.  On June 21 2019, the court entered a custody order stating that it was "unable to find that Father does not pose a risk of harm to the Children and[,] therefore[,] finds that Father should not be permitted any unsupervised contact with the Children."  Opinion and Order, 6/24/19, at 2.  Accordingly, the court awarded Mother sole legal and primary physical custody of Children.  Father was permitted access to Children's medical, dental, religious and school records, **see** 23 Pa.C.S. § 5336(a), and granted supervised physical custody with Children.  All communications between Father and Children were ordered to go through or be supervised by a counselor.  The trial court's opinion and order reiterated that Father has failed to obtain a threat of harm evaluation since March 2012.  As per the order, Father will not gain unsupervised visitation until he obtains the evaluation.

[6] Pursuant to section 2512(a)(1),"[a] petition to terminate parental rights with respect to a child under the age of 18 years may be filed by . . . [e]ither parent when termination is sought with respect to the other parent."  When a parent petitions for the involuntary termination of the other natural parent's parental rights under section 2512(a), that petitioning parent must include in his or her petition "an aver[ment] that an adoption is presently contemplated [or] that a person with a present intention to adopt exits."  23 Pa.C.S. § 2512(b).  Accordingly, on the same date that Mother filed her petition to terminate, Mother and Stepfather filed a petition to adopt Children under 23 Pa.C.S. § 2701.

[7] 23 Pa.C.S. §§ 2101-2938.

[8] Guardian *ad litem* Kelly McNaney, Esquire, represented Children at the termination hearing as there was no conflict between their legal and best interests.  **See In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring

notice of Father's temporary and permanent PFA orders, self-reporting risk of harm evaluations, and the trial court's June 21, 2019 opinion and order as it related to the parties' custody proceedings. At the hearing, Mother testified that she had been granted sole legal and physical custody of Children in 2012, that Father has not provided any financial support for Children since the parties' separation in 2009, that Father has had almost no contact with children since 2009,[9] that Children do not have a relationship or bond with Father, that Children have a bond with Stepfather whom they call "Dad," and that termination of his parental rights would be in Children's best interests.

At the hearing, Father testified that he wrote Children letters from jail every month from 2012-2015, but that all but two of them were "return[ed] to sender." N.T. Termination Hearing, 8/14/19, at 65. He also testified that he did nothing to support Children since the parties' separation because when he came out of jail he "didn't have a job, [had] a record, [was] wait[ing] for the PFA to [end], and Mother "was hiding with [his] kids." *Id.* at 75-76. At the time of the hearing, Father was working as a music producer and trying to release his own album. *Id.* at 78. Finally, Father testified that his goal is

_____

contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests."); **see also** N.T. Termination Hearing, 8/14/19, at 88, 91.

[9] Mother testified that Father sent her two letters for Children while he was incarcerated. N.T. Termination Hearing, 8/14/19, at 22.

to "be able to raise [his] children . . . to become good model citizens in th[is] society . . . [so] that they can contribute to the society[] so they're not a burden to any taxpayer." ***Id.*** at 70.

Following the hearing, the court granted Mother's termination petition on the basis of sections 2511(a)(1)[10] and (b), specifically finding that:

> [Father] had not evidenced a settled purpose by virtue of his continued attempts to seek custody despite his failure to comply with multiple directives of the [c]ourt. We found that [Father] has refused or failed to perform parental duties, which [Father] admitted in his testimony. To the extent that [Father] believes [Mother's] conduct obstructed his efforts – and as noted in the record – [Mother] filed a [PFA] order to protect her children and received a one[-]year order after a hearing at which [Father] appeared self-represented.

Trial Court Pa.R.A.P. 1925(a) Opinion, 9/24/19, at 3-4. Father filed *pro se* notices of appeal from the termination orders as well as a *pro se* Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[11]

_____

[10] A parent's rights "in regard to a child may be terminated after a petition" proves, by clear and convincing evidence that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition **either** has evidenced a settled purpose of relinquishing parental claim to a child or has refused **or** failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1) (emphasis added). Here, Mother's attorney conceded that he would be pursuing termination under the latter portion of section 2511(a)(1), that Father has "failed to perform parental duties." N.T. Termination Petition, 8/14/19, at 28.

[11] On September 12, 2019, Father's counsel of record, Farley G. Holt, Esquire, filed a praecipe for withdrawal of appearance/praecipe to enter appearance *pro se*. On that same date, Father petitioned for court-appointed counsel and for *in forma pauperis* (IFP) status and filed his notice of appeal and Rule 1925(b) concise statement of errors complained of on appeal *pro se*. On

On appeal, Father presents the following issue for our consideration:

Whether the trial court erred by finding clear and convincing evidence that [Father] refused or failed to perform parental duties in the six months preceding the termination petition in disregard [of] clear evidence that[:] (i) Mother engaged in obstructive behavior designed to prevent [Father] from performing such duties; (ii) performing such duties would have required [Father] to violate the terms of a Protection from Abuse Order acquired by Mother that extended to the Children and covered the entirety of the relevant six-month period; and (iii) [Father] filed for custody of the Children and completed a risk of harm evaluation in connection therewith during the relevant six-month period, thereby taking the only action he was legally permitted to take with respect to the Children during the time in question?

Appellant's Brief, at 3.

We first note that Father's self-reporting evaluation and February 2019 evaluation by Luis Rivera, Ph.D., do not comply with the court's directive that he undergo an evaluation that takes into account information from Mother in order to determine, to a reasonable degree of medical certainty, whether Father is believed to be a threat to Children. Father contends that Mother employed "obstructionist" tactics to prevent him from finding Children, even necessitating him to hire a private investigator to track her and Children down. While Mother undoubtedly made it difficult for Father to locate her and Children when he was not in prison, her actions were based on her justified fear of Father as a result of his past abusive behavior. Moreover, as the court

_____

September 20, 2019, the court granted Father IFP status and appointed current appellate counsel, Erik Spurlin, Esquire, to represent Father "for the purpose of assisting in the Appeal." Order Appointing Counsel, 9/24/19.

noted, Father was afforded the opportunity to communicate with counsel to inquire about the health and welfare of Children while the PFA was in place, but made no efforts to do so. He has had limited contact with Children since he separated from Mother and, when he did have contact, Father was unable to interact with them appropriately. In fact, Father's conduct caused Children to fear him. The court concluded no bond exists between Father and Children. Finally, the trial court did not find Father credible. ***See*** N.T. Termination Hearing, 8/14/19, at 96.

After reviewing the notes of testimony from the termination hearing, the remainder of the certified record, relevant case law and the parties' briefs, we rely upon the Honorable Andrea Marceca Strong's trial court opinion dated September 24, 2019, and her on-the-record decision from the termination proceedings to affirm the order terminating Father's parental rights to Children. ***See*** Termination Hearing, 8/14/19, at 97-99 (where Father failed to pay financial support, had not made recent efforts to contact children since his release from jail three years prior, had not complied with terms of PFA order in order to regain unsupervised visitation and custody of Children, exhibited alarming behavior frightening Children, never contacted counsel to ascertain health and welfare of Children while PFA order in effect, failed to send Children any letters, gifts or monetary support, and put his own desires over that of best interest of his Children, clear and convincing evidence exists to terminate parental rights under section 2511(a)(1)); ***see also In re D.J.S***., 737 A.2d 283, 287 (Pa. Super. 1999) (It is well-settled that "[p]arental rights

may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities.") (citation omitted). We instruct the parties to attach a copy of Judge Strong's opinion in the event of further proceedings in the matter.

Order affirmed.[12]

Judge Dubow joins this Memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/18/2020

---

[12] Although not raised on appeal, because termination is a two-part process, we also find that clear and convincing evidence existed to prove termination under section 2511(b) as it was in the best interest of Children and furthered their needs and welfare. **See** N.T. Termination Hearing, 8/14/19, at 100-102. **See also In re C.P.**, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists **and** that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)) (emphasis added).

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

In Re: Adoption of          :
P      P    ,               :          No. 2019-088  :
          A Minor           :

## OPINION PURSUANT TO
## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

AND NOW, this 24th day of September, 2019, the Court is in receipt of the Notice of Appeal and Concise Statement of Matters Complained of on Appeal filed by G      P      (hereinafter "Appellant"). Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the Court does hereby adopt its Opinion dictated on the record on August 14, 2019 as the place where the reasons for the decision are found and supplements as follows:

Initially, the Court notes that it is difficult to discern from the form of Appellant's offered Statement of Errors, what legal errors he is alleging on Appeal.

> A concise statement of errors complained of on appeal must be specific enough for the trial court to identify and address the issues the appellant wishes to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006) (quoting *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006)). Pennsylvania Rule of Appellate Procedure 1925 provides that a Rule 1925(b) statement "shall concisely identify each ruling or error that the

1

#33

appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). See also Commonwealth v. Lopata, 754 A.2d 685, 689 (Pa. Super. 2000) (stating that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal").

*S.S. v. T. J.*, 212 A.3d 1026, (Pa.Super. 2019). Similar to the circumstances in *S.S. v. T. J.*, Appellant provides a rambling statement of his interpretation of facts of record and additional statements which are not of record, together with his own conclusions, without clear identification of any legal errors. To the extent that we are able to discern identifiable issues, and in the event that the Superior Court does not find waiver, the Court responds as follows:

Appellant statements 1 and 2 appear to assert that the Court did not consider whether terminating his parental rights was in the best interests of the children. The transcript of the proceedings speaks for itself. The Court explicitly considered the best interests of the children, including representations to the Court from court-appointed legal counsel for the children, that the children have no relationship with Appellant, do not wish to

2

have a relationship with Appellant, and are fearful of Appellant.[1] As required in 23 Pa.C.S.A. § 2511(b), once grounds were met under §2511(a)(1), the Court gave primary consideration to the emotional needs of the children and found that the children would not be harmed by terminating parental rights of father since they look at stepfather as their father.

Appellant's statements in numbers 3, 4, and 5 do not state a discernable legal issue for appeal. To the extent that it appears that Appellant is denying that he evidenced a settled purpose of relinquishing claim to the Children under 23 Pa.C.S.A. § 2511(a)(1), the Court notes that we explicitly found that Appellant had not evidenced a settled purpose by virtue of his continued attempts to seek custody despite his failure to comply with multiple directives of the Court. We found that Appellant has refused or failed to perform parental duties, which Appellant admitted in his testimony. To the extent that Appellant believes that Appellee's conduct obstructed his efforts—and as noted in the record—Appellee filed for a protection from abuse order to protect her children and received a one year order after a hearing at which

---

[1] We note that the children did not testify or speak to the Court at the termination hearing. The children did speak to the Court as part of a custody trial; however, no party moved to include that testimony as part of the record for the termination hearing. As such, the Court may only consider the evidence presented in this underlying action.

3

Appellant appeared self-represented. The statements made in paragraph 5 of Appellant's Statement are not of record and were, therefore, not considered.

Appellant's statements in number 6 appear to suggest that the Court improperly considered environmental factors under 23 Pa.C.S.A. § 2511(b) in addition to asserting claims not of record.[2] The Court did not find that Appellant was incapable of providing support to the children, instead, the Court found that Appellant failed to perform parental duties. While parental duties include an obligation to pay support, "[t]his affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super.2003).

Appellant has not demonstrated a continuing interest in the children or made any genuine effort to maintain contact with them. Appellant has made minimal effort to "maintain a place of importance in the child's life." *Id.* (citing *In re Burns*, 379 A.2d 535 (Pa.1977)). Appellant has failed to exert himself to maintain communication with the Children—he wrote letters while

---

[2] Appellant's commentary in his Statement regarding his ability to work is inconsistent with his testimony at the termination hearing. Appellant presented testimony that he had been driving a cab prior to moving to Virginia and is currently self-employed and working as a music producer.

4

he was incarcerated, but stopped when he was released. The Protection from Abuse Order entered October 1, 2018 allows Appellant to contact Appellee's counsel to ascertain the health and welfare of the children, but he did not make efforts to do so.

This Court considered Appellant's failure to provide financial support, despite his available resources, and that Appellant made no effort to support his children at any time after he and Appellee were separated in 2012—either during or after his periods of incarceration. We note that, although incarceration is not a ground to terminate parental rights, it also does not exclude a parent's failure to "take affirmative steps to support a parent-child relationship. *In re Adoption of K.J.*, 936 A.2d 1128 (Pa.Super.2007), 1133 (citing *In re D.J.S.*, 737 A.2d 283 (Pa.Super.1999)). The remainder of Appellant's commentary is not of record and appears to be an effort by Appellant to improperly supplement his hearing testimony with unsubstantiated allegations.

It is unclear what legal issue Appellant's statements in number 7 attempt to address. The Court notes that we took judicial notice of several orders in the protection from abuse and custody actions during the termination

5

hearing as permitted by the Rules of Evidence; however, no party provided certified copies of the Orders to be included in the record.[3] Appellant asserts that he was unable to contact the children when he was released from prison in 2016 due to a protection from abuse order. The Court notes that the protection from abuse order expired on April 19, 2015 and that, despite discussion of the expiration date on the record at the termination hearing, Appellant continues to claim that the protection from abuse order prevented him from contacting the children.

An additional protection from abuse order entered on October 1, 2018 named Appellee and the children as protected parties for one year, directing that Appellant obtain a threat of harm evaluation, while allowing Appellant to contact counsel to ascertain the health and welfare of the children. Appellant did not make efforts to contact Appellee's counsel regarding the children after

---

[3] Pennsylvania Rules of Evidence No. 201(b)(2) permits courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned". This includes official court records. *See e.g. Germantown Cab Co. v. Philadelphia Parking Authority*, 27 A.3d 280, 283 n.8 (Pa. Commw. 2011). The Court took judicial notice of the following Orders:
- Order Directing Plaintiff to Undergo Evaluation dated April 2, 2012 (as referenced in the Order for Custody dated June 21, 2019)
- Protection from Abuse Order dated April 19, 2012 and expired April 19, 2015
- Order for Custody dated April 30, 2012
- Protection from Abuse Order dated October 1, 2018 naming Appellee and the children as protected parties
- Order dated November 1, 2018 declines to enter an award of custody due to threat of harm (as referenced in the Order for Custody dated June 21, 2019)
- Order for Custody dated June 21, 2019.

6

entry of that order. Appellant was instructed again in the Order of November 1, 2018 that the court was declining to enter an award of custody until such time as Appellant obtained a threat of harm evaluation.[4] Appellant has failed to obtain a valid threat of harm evaluation that complies with the directives of the Court.

Appellant's statement in number 8 does not state a discernable legal issue; however, the events Appellant describes occurred after he received notice of the filing of the petition to terminate his parental rights on June 7, 2019. Pursuant to 23 Pa.C.S.A. § 2511(b), the Court cannot consider efforts made by the parent initiated after the filing of the petition to terminate parental rights has been given. We additionally note that the requirement to obtain a threat of harm evaluation, which was not self-reporting and included interviews with the mothers of Appellant's children, has been in existence since April 2, 2012. Appellant has failed to comply with that directive despite repeated contact with the Court.[5] In the June 21, 2019 custody order, the

---

[4] Court took judicial notice of the Order dated November 1, 2018 which indicates, on page 1, that Appellant was to obtain a threat of harm evaluation and on page 2 that Appellant poses a threat of harm.
[5] After the entry of the Order in April 2, 2012 directing Appellant to obtain a new evaluation and the Order of Custody dated April 30, 2012, Appellant filed an appeal on June 26, 2012 which was quashed as untimely. Since that time, Appellant filed three additional petitions for custody in 2016,

7

Court specifically found that it was in the best interest of the children that "all of [Appellant's] contact with the Children must be supervised in a therapeutic setting due to the continued threat of harm to the Children by [Appellant] as well as a complete lack of a relationship between [Appellant] and the Children."[6]

In making the determination to terminate Appellant's parental rights, the Court considered the fact that for over six years Appellant did not address his threat of harm to the children. We also considered Appellant's inability to appropriately interact with children when he has had contact with them. When afforded the opportunity to communicate with counsel for the purposes of ascertaining the health and welfare of the children after the protection from abuse order was entered on October 1, 2018, Appellant made no efforts to do so. Appellant has no relationship and therefore no bond with the children. The children's court-appointed legal counsel indicated that Appellant's conduct has caused the children to be afraid of Appellant and desire to have no contact with him.

In conclusion, this Court considered the credible evidence and

---

2018 and 2019 without resolving the need for a valid threat of harm evaluation.
[6] Custody Order dated June 21, 2019, page 3.

testimony presented at the hearing on the petition, as well as the evidence of record, and properly applied such to the factors at 23 Pa.C.S.A. §2511 in determining that the termination of Appellant's parental rights was proper. The Court's decision in terminating the parental rights of Appellant was sufficiently supported by clear, convincing, and credible evidence presented of record. The trial court's decision should be affirmed.

Respectfully Submitted,

_____
ANDREA MARCECA STRONG, JUDGE

9