J-A10004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., FATHER | : : : : : : : | |
| | : | No. 3060 EDA 2019 |

Appeal from the Decree Entered September 27, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2019-A0053

BEFORE:  BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:

**FILED SEPTEMBER 3, 2020**

In order to facilitate their adoption of C.M.,[1] her Maternal Grandparents filed a petition to terminate Father's parental rights.  Mother joined in the petition as well as filing a petition to voluntarily relinquish her parental rights.  She did so because of ongoing medical issues.  The majority, based on the rationale and what it discerns to be "public policy" of ***In re Adoption of M.R.D.***, 145 A.3d 1117 (Pa. 2016), and what it discerns to be the public policy behind it, would foreclose the adoption by Maternal Grandparents, even

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] C.M. was represented during these proceedings by appointed legal counsel who supports the adoption and termination of Father's parental rights.

though they meet the express requirement of the Adoption Act because Mother would still reside with them and still be involved with C.M.'s care.

Because I disagree with the majority's conclusion because it, in effect, amends that provision of the Adoption Code and does not accept the facts as found by the orphans' court, I respectfully dissent.

Some background first.

## I.

## A.

23 Pa.C.S. § 2512(a) of the Adoption Act[2] provides who may bring a petition to involuntarily terminate parental rights and what the petition must contain. It provides, in relevant part:

(a) Who may file.—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

***

(3) **The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt)**. (Emphasis added).

23 Pa.C.S. § 2512(b) requires that in addition to setting forth the basis for terminating parental rights, it also requires that "an averment that the

---

[2] 23 Pa.C.S. §§ 2101-2938.

petitioner will assume custody of the child until such time as the child is adopted." ***In re Adoption of L.J.B.***, 18 A.3d 1098, 1107 (Pa. 2011). A contemplated adoption is required because "the purpose of involuntary termination of parental rights is to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child." ***Id.*** at 1108.[3]

**B.**

Once the pleading set forth under Section 2512(b) satisfies the statutory prerequisites for a hearing, the orphans' court then applies the two-part test for termination of parental rights set forth in 23 Pa.C.S. § 2511.[4]  The initial focus is on the conduct of the parent whose rights are at issue. ***In re C.L.G***., 956 A.2d 999, 1004 (Pa. Super. 2008).  Termination under Section 2511(a)(1)

---

[3] The Adoption Act requires both parents to consent to the adoption and relinquish their parental rights.  ***See*** 23 Pa.C.S. §2711.  This relinquishment severs the legal ties between the child and the natural parents allowing the child to be adopted.  ***See In re Adoption of M.R.D***., 145 A.3d at 1128.

[4] Generally, the Adoption Act does not permit one parent to retain parental rights while terminating the other parent's rights.  23 Pa.C.S. § 2711.  Two exceptions allow a parent to retain parental rights while allowing the child to be adopted.  The first is the "spousal exception" under 23 Pa.C.S. § 2903, permitting a parent to consent to the adoption by a spouse (i.e., the stepparent) while keeping intact his/her own legal relationship with the child. The second is the "cause shown" exception under 23 Pa.C.S. § 2901 that gives the orphans' court discretion to grant an adoption petition in limited circumstances where the moving parent cannot meet the statutory requirements, but has demonstrated good cause for noncompliance.  If neither of these exceptions applies, then the proposed adoption would be invalid.

requires the moving party to produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, revealing a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

"Parental duties" have been defined as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. ... The parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)).

In addition, the moving party is not required to demonstrate **both** a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. 23 Pa.C.S. § 2511(a)(1) provides that parental rights may be terminated if the parent either demonstrates a settled purpose of relinquishing a parental claim to a child **or** fails to perform parental duties.

Regarding the six-month period prior to filing the termination petition, in *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008), we stated that:

[T]he orphans' court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances

of each case and consider all explanations offered by the parent facing termination of his ... parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his ... conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to 23 Pa.C.S. § 2511(b). *Id.*

The third prong of the termination test centers on the needs and welfare of the child. *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010); 23 Pa.C.S. § 2511(b). "A proper Section 2511(b) analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re T.D*., 949 A.2d 910, 920 (Pa. Super. 2008). In *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013), our Supreme Court stated:

> The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993), this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

**C.**

Recently, in ***In re Adoption of M.R.D.***, our Supreme Court addressed involuntary termination of a father's parental rights where the mother sought to retain her own. Mother sought the termination of the father's parental rights to allow the maternal grandfather to adopt her children and become the mother's co-parent. Because the mother sought to retain her parental rights, no adoption would be valid unless an exception to the Adoption Act applied. Because, obviously, the spousal exception did not apply, mother claimed she fell within the "good cause" exception contained in 23 Pa.C.S. § 2901[5] for allowing the proposed grandparent adoption because the father had been absent from the children's lives for years while the maternal grandfather regularly shared parental duties with mother.

Concluding that the "good cause shown" was not made out, our Supreme Court reversed the termination, reasoning that the mother and the maternal grandfather were not part of an intact family unit, nor would the proposed adoption create one because the maternal grandfather planned to live separately from the mother and the children. It also "cautioned that

---

[5] 23 Pa.C.S. § 2901 provides that: "Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time." 23 Pa.C.S. § 2901.

permitting the maternal grandfather to adopt" would "open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that termination may be achieved." *Id.* at 1129. As our Supreme Court noted, "[g]iven that the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, we must ensure that we do not open the floodgates to such gamesmanship." *Id.* (citation omitted). It concluded that the mother could not employ the cause shown exception as a matter of law.

Now to the merits of this appeal

## II.

The majority does not dispute that Maternal Grandparents met all the statutory requirements to seek adoption and terminate Father's parental rights under 23 Pa.C.S. § 2512 (a). Nor does it dispute that there is clear and convincing evidence that showed that Father had "a settled purpose of relinquishing a parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). Instead, the majority finds that, even though the statutory requirements were met, the termination of Father's parental rights pursuant to § 2511(a)(1) and (b) does not promote the statutory intent or legislative purpose of the Adoption Act.

It expressly does so based, not on the holding, but the rationale set forth in *In re Adoption of M.R.D.* because Maternal Grandparents' proposed adoption purportedly would not create a new family unit because Mother will continue to share a maternal relationship with C.M. Simply put, the majority found that the proposed adoption is pretextual. It also found that because Mother expressed her intent to continue as C.M.'s daily caregiver and that Mother voluntarily relinquished her parental rights because Father utilized the courts to pursue custodial rights to C.M.

I disagree with the majority's conclusions for several reasons because it does not apply the law as written and ignores the orphans' court's factual finding.

**First**, *In re Adoption of M.R.D.* does not apply to this case. That case involved the mother's petition to terminate father's parental rights under 23 Pa.C.S. § 2901 allowing an orphans' court to terminate parental rights for "good cause shown" even though the other spouse is going to retain his or her parental rights. What *In re Adoption of M.R.D.* addressed was whether there was "good cause" to terminate father's parental rights when mother retained hers. Our Supreme Court held that because of the factors previously mentioned, "good cause" was not "shown."

This case is not a "good cause shown" case brought under 23 Pa.C.S. § 2901 because the application here is not that of the Mother but of the Maternal Grandparents, who have a right to independently seek adoption

under 23 Pa.C.S. § 2512(a)(3). Once Mother has relinquished her parental rights, the focus is on whether the Maternal Grandparents' petition meets the statutory basis for adoption and termination of parental rights. Resolution of the issue does not involve a good cause analysis, only whether the statutory requirements are met. Accordingly, the good cause exception does not apply.

**Second**, what the majority ignores is that the adoption is a statutory procedure. Once you meet the requirements of a statute, you are entitled to what is requested. There is no dispute that Maternal Grandparents met the requirements of 23 Pa.C.S. § 2512 (a). The majority, instead of applying the clear statutory standards, instead adds an additional requirement to that provision that if one of the parents is going to perform some parental duties, then there cannot be an adoption.

**Third**, not only does this involve a different provision of the Adoption Code, the facts are decidedly different. In *In re Adoption of M.R.D.*, our Supreme Court reasoned that the mother and the maternal grandfather would not create an intact family unit because the maternal grandfather planned to live separately from the mother and the children. In this case, allowing the adoption as an intact family because Maternal Grandparents, Mother and C.M. would live together, giving C.M. permanency in relationships. Just because they had lived together as a family unit before (Mother will continue to provide parental duties so long as her health allows) does not disqualify them as a family unit or a new family unit. For example, foster parents have custody of

children and perform parental duties but that does not foreclose a finding that it was not a new family unit.

**Finally**, the majority's finding that adoption was pretextual is directly contrary to the orphans' court's findings. In addressing Father's argument that the petition is contrived and inappropriate, the orphans' court stated:

> The birth mother, B.M., and her father testified that she has been diagnosed with lupus and scleroderma, **which are debilitating and may prove fatal.** N.T. 7/17/2019, p. 13. As a result of these diagnoses, she and her parents discussed adoption of C.M. so that C.M. would have stability in her home life and be raised and supported by her adoptive parents, who have been part of her household and her loving family members for all of her life. Birth father argues that the adoption petition, …, is a contrived effort to deprive him of his parental rights.
>
> ***
>
> Birth father complains that he feels he faces termination of parental rights because he filed a custody petition. While it is true that maternal grandparents and birth mother filed their petitions in this matter following receipt of birth father's February 2019 custody petition, **this court finds the testimony of maternal grandfather and birth mother credible regarding their reasons for seeking to have the grandparents adopt this child.**

Orphans' Court Opinion, pp. 10-11 (emphasis added).

## III.

Father also challenged the orphan's court findings that there was clear and convincing evidence to terminate his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). The orphans' court in its well-reasoned and through opinion addressed Father's failure to carry out any parental duties, and his post abandonment contact with child were, at best, feeble. It found that:

> The facts clearly established in this case demonstrate a lengthy period of more than two years and four months during which the birth father failed and refused to perform any parental duties whatsoever with respect to this child. The birth father, J.C., acknowledged in his testimony that he has not seen nor supported the child since October 2016, when she was nine months old. N.T. 6/10/2019, pp 12-13. The birth father stated that he has only seen the child a total of six or seven times from the date of her birth until October of 2016. N.T. 6/10/2019, p. 108. He never lived with the child, and never provided any support for her, other than purchasing a crib and providing $50 to birth mother on one occasion in October of 2016. He conceded that he has not contacted his daughter to provide her birthday presents, cards or other tokens of affection, nor had he provided her with food, clothing or other support in 2017, 2018 or 2019, up until the filing of the petition for termination of his parental rights. N.T. 6/10/2019, pp. 13-16.

> * * *

> The birth father admitted in his testimony that he has no bond with the child and that he has not contributed financially to supporting the child in any way since the spring of 2016. N.T. 7/17/2019 at pp. 109 and 129. Indeed, he acknowledged in his testimony that he has not been a father to this child since October 2016. N.T. 7/17/2019 at p. 143.

Orphans' Court Opinion, pp. 3-4.

Based on those undisputed facts, the orphans' court found that Maternal Grandparents had established by clear and convincing evidence that Father

failed to parent this child for a period of over two years from October 2016 through the date of the filing of the petition to terminate parental rights on April 15, 2019. It also found that in the six months immediately preceding the filing of the petition, Father had no contact with and provided no support for the child and utterly failed to perform any parental duties or responsibilities.

The orphans' court found that Mother did not "thwart" Father's contact with C.M. In considering Father's explanation for failing to carry out his parental duties, the orphans' court stated Father's reason as follows:

> In essence, J.C. [Father] claims that birth mother, having separated from him, did not wish to speak to him and prevented him from seeing his daughter.
>
> J.C. testified that he called the birth mother a limited number of times in late 2016 and late 2017. Specifically, he testified that he telephoned the birth mother once in December of 2016, told her that he had presents he wished to give to C.M., and that the birth mother at that time told him that she did not consider him to be the father, and that she did not need anything from him. N.T. 7/17/2019, pp. 106-107. J.C. testified that he called the birth mother a second time on November 22, 2017, approximately thirteen (13) months after he had last seen the child. He stated that he wished to see C.M. and he claims that the birth mother again stated that he is not the father and terminated the call. He claims he tried to call the birth mother back approximately 7 times on November 22, 2017 and his calls were not answered. N.T. 7/17/2019, p 109.
>
> After the November 22, 2017 telephone call he did not have any contact with birth mother until February 19, 2019, when he filed a petition for custody seeking visits with the child and telephoned the birth mother for a third time. N.T. 7/17/2019, p. 112. Although birth father claims that birth mother at some point in 2016, when he attempted to visit her and the child at her parent's home, told him that he was not welcome, it appears that

- 12 -

this occurred before October 13, 2016, during the period when birth mother and birth father arranged a limited number of visits at a park. Birth father also claims that birth mother called the police and threatened to have him charged with harassment, but he provided no specifics and no corroboration of this allegation. Birth father acknowledged that although birth mother had petitioned for a protection from abuse order before the child's birth, that petition had been withdrawn and no protection from abuse order had been granted preventing him from seeing his child.

Birth father explained that he was incarcerated or admitted to an inpatient psychiatric hospital in December 2017 through February of 2018, and that thereafter he was residing at a Veterans' Administration facility and transitional housing under the Veterans' Administration from February of 2018 through October of 2018. N.T. 7/17/2019, p. 113. He testified that he has a diagnosis of PTSD. He also testified that he had a criminal charge of assault related to an assault on a police officer in 2017, to which he had pleaded guilty.

He testified that in February of 2019, he telephoned the birth mother for a third time and requested to visit the child and again the birth mother declined to discuss visits with him. Thereafter, he testified that birth mother sent him a text message asking him not to contact her again. N.T. 7/17/2019, p. 114. Upon cross-examination, birth father acknowledged text messages in which birth mother had said "you are not a father, you are just a sperm donor." N.T. 7/17/2019, p. 130-31.

Orphans' Court Opinion, pp 5-6. Finding him not credible, the orphans' court rejected Father's explanation that he was prevented from carrying out any parental duties, stating:

This court concludes that the testimony of J.C. that birth mother repeatedly told him he was not the father of the child was neither entirely candid nor credible. It is clear from the testimony as a whole that, between October 2016 and February 2019, when birth father reached out to her, birth mother was communicating that she did not consider him to be acting as a father, but she did not imply – nor did he truly understand her to be saying – that he was not the biological father of the child. This court finds his

- 13 -

testimony that he understood birth mother to question his paternity to lack credibility.

\*\*\*

The birth father's explanation for his conduct in this case is inadequate and inconsistent. He states that he had no choice but to file a petition for custody because birth mother would not agree to visits between him and C.M. However, he made telephone calls to the birth mother on only three occasions over a period of over two years, specifically in December of 2016, on November 22, 2017 and in February of 2019. These sporadic telephone calls with no written follow-up and no petition seeking custody until 2019, are not sufficient to establish a persistent and determined effort to establish a parent-child relationship with C.M. As observed above, a parent "must demonstrate a serious intent . . . to re-cultivate a parent-child relationship," and a parent must not yield to every obstacle but must exercise reasonable firmness in seeking to establish and maintain a parent-child relationship.

Orphans' Court Opinion, pp 6-7.

Given that the orphans' court rejected Father's explanation as not credible, the majority improperly found that Father had justifiable reasons.

Lastly, the orphans' court's decision advanced "primary" consideration that effect of termination of parental rights on C.M. would best foster the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S § 2511(b). In considering those needs, the orphans' court found:

In this case, the testimony clearly established that the birth father has not maintained contact nor exercised reasonable firmness in seeking and obtaining opportunities to visit and develop a parental relationship with child. As birth father himself acknowledged, there is no parental bond between the child and birth father.

By contrast, the Court concludes, based upon all of the testimony, that there is a close, nurturing and loving relationship between the child and the prospective adoptive parents, with

- 14 -

whom she lives and who are part of her daily support structure. Her emotional and physical needs are being met and will continue to be met in this loving home.

Consequently, this court concludes that there will be no harm or detriment to the child from terminating the parental rights of the birth father, as there is no parental bond whatsoever that will be severed. The emotional needs and welfare of the child can best be met by termination of the parental rights of the birth father, and the child will not suffer a detriment, and will not suffer irreparable harm, as a result of termination of the parental rights of this birth father.

Orphans' Court Opinion at pp. 12-13.

Given that our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court and apply the Adoption Code as written, not as we think it should be written, because I can discern no error of law or abuse of discretion in any of the orphans' court's findings or conclusions, I would affirm its decision.

Accordingly, I respectfully dissent.