J-S41042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TERM. OF PARENTAL RIGHTS TO D.S.D. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D., FATHER | : | No. 797 MDA 2020 |

Appeal from the Decree Entered May 8, 2020
in the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2019-01874

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.: **FILED: OCTOBER 7, 2020**

D.D. (Father) appeals from the decree entered May 8, 2020, terminating involuntarily his parental rights to his son, D.S.D. (Child).[1]  We affirm.

Child entered foster care at the request of the Lancaster County Children and Youth Social Service Agency (CYSSA) shortly after his birth in March 2018.  N.T., 2/20/2020, at 9.  Two of Mother's older children were already in foster care due to concerns regarding her substance abuse and general neglect, and Child entered foster care for the same reasons.  *Id.*  Notably, Child was born with neonatal abstinence syndrome due to Mother's opiate abuse during pregnancy.  *Id.* at 20.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree terminating involuntarily the parental rights of Child's mother, U.R. (Mother).  Mother did not appeal.

At the time of Child's birth, CYSSA was not aware of Father's identity. *Id.* at 9. Mother identified Father after Child's birth, and testing confirmed his paternity in May 2018. *Id.* at 9-10, 37-38, 51. Father initially cooperated with CYSSA by visiting with Child, participating in the development of a child permanency plan, and completing a substance abuse assessment. *Id.* at 10-11, 17-19, 40, 52. However, he missed three visits in a row in January 2019, resulting in his discharge from the visitation program, and did not visit Child again until after a hearing in November 2019. *Id.* at 17-18. In March 2019, Father spoke to the CYSSA caseworker and informed her that he no longer intended to cooperate with CYSSA, that he would be working toward the completion of his permanency plan goals without any involvement from CYSSA, and that she should contact his probation officer for any necessary information. *Id.* at 13-14, 36, 52. CYSSA was not aware of Father making any progress toward the completion of his goals after that time, other than by remaining free of additional criminal convictions. *Id.* at 14-16, 34, 42, 54, 58-59.

On July 30, 2019, CYSSA filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court held a termination hearing on February 20, 2020. Following the hearing, on May 8, 2020, the court entered a decree terminating Father's rights. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, on June 1, 2020.

Father now raises the following claim for our review.

1. Whether the [orphans' c]ourt correctly found that [CYSSA] had met its burden of establishing with clear and convincing evidence that Father, who was incarcerated for a majority of the relevant time period, failed or refused to perform his parental duties and would not be in a position to do so in the reasonable future.

Father's Brief at 6.

We review Father's claim in accordance with the following standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child[.]

- 3 -

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(1), (2), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we analyze the court's decision pursuant to subsections 2511(a)(1) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We first consider whether the orphans' court abused its discretion by terminating Father's rights pursuant to subsection 2511(a)(1). To satisfy

the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* This Court has emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

In his brief, Father argues that CYSSA failed to meet its burden of proof. He maintains that CYSSA did not know whether he had made progress toward the completion of his permanency plan goals or not, because it failed to make inquiries of his probation officer. Father's Brief at

10.    Father insists that it was reasonable for him to work toward the completion of his goals without the involvement of CYSSA because CYSSA did not provide him with clear direction on how to complete his goals, while his probation officer did, and because the CYSSA caseworker historically had verified the information that he provided to his probation officer.  *Id.* at 14. Father contends that pursuant to his testimony, which he characterizes as unrebutted, his goals were nearly complete.  *Id.* at 10.  He also defends his failure to participate in visits with Child, explaining that this was not due to noninterest on his part, but because "seeing his son in placement was emotionally too painful for him."  *Id.* at 14.

The orphans' court explained its decision to terminate Father's parental rights to Child involuntarily as follows, in relevant part.

> During the six months leading up to [CYSSA's] filing of its petition for termination of Father's rights (since January 24, 2019), Father had no contact with [C]hild.  On or about March 6, 2019, Father informed his caseworker that he [would] not be working with [CYSSA] and directed the [CYSSA] caseworker to obtain any information about Father she might seek from Father's probation officer (and not from Father himself). Father's refusal to work with [CYSSA] is consistent with a renunciation of his parental claim to [C]hild.  When Father chose to not work on his plan objectives to achieve reunification with Child, Father chose to relinquish his parental relationship with Child.
>
> ***
>
> For a period of six months preceding the filing of [CYSSA's] petition to terminate parental rights, Father took no affirmative steps to perform parental duties.  He made no effort to maintain the parent-child relationship.  Grounds for the termination of

Father's parental rights under § 2511(a)(1) have been proven by clear and convincing evidence.

Orphans' Court Opinion, 6/29/2020, at 14-16.

Our review of the record supports the conclusions of the orphans' court. CYSSA filed its petition to terminate Father's parental rights on July 30, 2019, and Father had no contact with Child at all during the six months immediately preceding the filing of the petition. As summarized above, Father attended visits with Child consistently in 2018. N.T., 2/20/2020, at 17-19. However, he missed three visits in a row in January 2019, resulting in his discharge from the visitation program. *Id.* at 17. Father did not have any further visits until the court reinstated them following a hearing in November 2019. *Id.* at 17-19. Our review of the record does not indicate that Father made any request to reinstate his visits prior to that time. Moreover, while Father testified that he stopped attending his visits because "every time I went I got a reminder of … why he was there. … And I always cried, and it always hurt me," this explanation does not excuse his failure to maintain contact with Child.[2] *Id.* at 67. Our case law provides that a parent

_____

[2] Father asserts in his statement of questions involved that the orphans' court committed an abuse of discretion because he was incarcerated "for a majority of the relevant time period[.]" Father's Brief at 6. As Father's testimony demonstrates, he stated during the hearing that his failure to have contact with Child was because of the distress that visits caused him, not because of a period of incarceration. Moreover, the record does not indicate that Father was incarcerated for any length of time during the relevant six months. CYSSA caseworker Janelle Weaver testified that Father was incarcerated prior to Child's birth. N.T., 2/20/2020, at 17. She added that Father was incarcerated from October 18, 2019, until an unspecified
*(Footnote Continued Next Page)*

must exercise reasonable firmness to preserve a relationship with his or her child, even in difficult circumstances. **B.,N.M.**, 856 A.2d at 855. It is clear that Father failed to do so here.

Moreover, Father refused to cooperate with CYSSA and work toward the completion of his permanency plan goals. Caseworker Weaver testified that Father cooperated initially by participating in the development of the permanency plan and completing a substance abuse assessment. N.T., 2/20/2020, at 10-11, 17-19, 40, 52. However, Father informed her in March 2019 that he no longer intended to cooperate with CYSSA, that he would be working toward the completion of his goals without the involvement of CYSSA, and that she should contact his probation officer for any needed information.[3] **Id.** at 13-14, 36, 52. Father did not make any apparent progress toward the completion of his goals after that time, other than by

(Footnote Continued) ————————————

time in November 2019. **Id.** at 54-55. She did not clarify whether Father had been incarcerated during any prior review periods, but noted that he had not incurred any additional criminal convictions since Child entered foster care. **Id.** at 59. Father indicated merely that he had been on probation for a drug possession conviction since 2016 and would remain on probation until 2021. **Id.** at 61, 78-79. Even accepting that Father had been incarcerated at some point during the relevant six months, his incarceration would not excuse his complete failure to perform parental duties in this case. An incarcerated parent must still utilize the resources available to preserve a relationship with his or her child. **B.,N.M.**, 856 A.2d 855.

[3] Caseworker Weaver contacted Father's probation officer in December 2018, January 2019, February 2019, October 2019, November 2019, and February 2020. N.T., 2/20/2020, at 45. Father's probation officer confirmed that Father was in compliance with his probation requirements. **Id.** at 46.

remaining free of further criminal convictions. *Id.* at 14-16, 34, 42, 54, 58-59. Most significantly, to Caseworker Weaver's knowledge, he did not complete a domestic violence evaluation or substance abuse treatment.[4] *Id.* at 12-15, 34, 42. In fact, Father refused to sign a release of information, preventing a referral to and evaluation by a domestic violence counselor through CYSSA. *Id.* at 15.

Contrary to Father's characterizations on appeal, he did not testify that his permanency plan goals were nearly complete. Father admitted that he had not completed his domestic violence goal. *Id.* at 73. He added that he would be willing to work on that goal, but that it was "just so expensive." *Id.* As for his substance abuse goal, Father stated that he was "not 100 percent sure" whether he had attended treatment after Child's birth or not. *Id.* at 77. He then stated that he was unable to attend treatment due to a lack of available appointments. *Id.* at 80. Regardless, even if Father had testified that his goals were nearly complete, and even if the orphans' court

_____

[4] The severity of Father's need for substance abuse treatment is somewhat unclear from the record. The orphans' court sustained an objection when Caseworker Weaver attempted to testify regarding the recommendations of Father's substance abuse assessment. N.T., 2/20/2020, at 11-12. Subsequently, Caseworker Weaver agreed that "there were recommendations" made by the assessment for Father to follow. *Id.* at 52. Although Father's assessment occurred in October 2018, he testified that he did not learn he needed to obtain substance abuse treatment until November 2019 and that there were no appointments available until February 2020. *Id.* at 11, 52, 80. He explained, "I went maybe three weeks and … my counselor … didn't think that that was what I needed. So she wanted me to … restart it and only do the counseling for men -- for myself." *Id.* at 80.

found his testimony to be credible, Father's near compliance would not excuse his complete failure to maintain contact with Child during the six months preceding the filing of the termination petition. ***B.,N.M.***, 856 A.2d at 855. Thus, we conclude that the court did not abuse its discretion by terminating Father's parental rights to Child pursuant to subsection 2511(a)(1), and we affirm that portion of the court's decree.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights to Child pursuant to subsection 2511(b). We apply the following analysis.

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted)).

Father waived any challenge to subsection 2511(b) by failing to include it in the argument section of his brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").

Even if Father had preserved a challenge to subsection 2511(b) for our review, we would conclude that it is meritless. Child never lived with Father and has had only sporadic contact with him during his short life due to Father's failure to participate in visitation consistently. It is apparent from these circumstances that Child and Father do not maintain a necessary and beneficial bond. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (observing that the relationship between K.Z.S. and his mother must have been "fairly attenuated," given that K.Z.S. had been in foster care for most of his young life, and had only limited contact with his mother during that time). Caseworker Weaver testified that Child appears to view Father not as a parental figure during visits, but as "an adult that's in a caregiving position." N.T., 2/20/2020, at 29-30. In contrast, she testified that Child treats his foster parents as parental figures and refers to them as "mommy" and "daddy." *Id.* at 30-31. Thus, we conclude that the orphans' court did

not abuse its discretion by concluding that CYSSA proved that terminating Father's parental rights will best serve Child's needs and welfare pursuant to subsection 2511(b).

Based on the foregoing analysis, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily, and we affirm the court's May 8, 2020 termination decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/07/2020</u>